IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| KIMBERLY HUDSON, *individually, and on behalf of others similarly situated,* | Case No.: 1:24-cv-1408 |
| Plaintiff, | |
| v. | **Jury Trial Demanded** |
| HOMEADVISOR, INC. D/B/A ANGI, | |
| Serve registered agent at:<br>7700 E. Arapahoe Road, Suite 220<br>Centennial, Colorado 80112 | |
| Defendant. | |

## CLASS ACTION COMPLAINT

COMES NOW Plaintiff Kimberly Hudson ("Hudson"), individually, and on behalf of all others similarly situated, and for her Class Action Complaint against Defendant HomeAdvisor, Inc. d/b/a Angi ("Defendant"), states:

### BACKGROUND

1. This case is about stopping incessant telemarketers like Defendant from sending unwanted text messages to the cell phones of Hudson and likely thousands of other persons.

2. Hudson brings this class action lawsuit against Defendant for sending improper telemarketing solicitation text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and the TCPA's corresponding regulations.

3. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' consumers' privacy and the right to be left alone from unwanted telemarketing communications.

1

4. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

5. Defendant sent telemarketing text messages to Hudson and the putative class members despite Hudson's and the putative class members phone numbers being registered on the National Do-Not-Call Registry ("DNC List").

6. In the first three months of 2024 alone, approximately 38.1 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited April 26, 2024). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing communications. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

7. Hudson seeks to represent putative class members who received two or more telemarketing text messages within a 12-month period from Defendant after previously registering their numbers on the DNC List.

## PARTIES AND BACKGROUND ON THE PARTIES

8. Hudson is an individual who at all times material to this Complaint has been a citizen of the State of Texas.

9. Hudson is a "person" as that term is defined by 47 U.S.C. §153(39).

10. Defendant is a Delaware corporation with its principal place of business and headquarters located in Denver, Colorado.

11. Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

12. Defendant is an "advertising company" who claims to have "years of experience in verticals such as . . . benefits . . ."

13. Defendant's business is to connect consumers with various home project services. These home projects include things such as interior, exterior, lawn and garden projects.

14. Defendant generates revenue in multiple ways, including, but not limited to: (1) advertising revenue, which includes revenue from service professionals under contract for advertising; (2) consumer connection revenue, which includes amounts paid by consumers that pay for the service professionals with whom they are connected; and, (3) membership revenue from consumers and service professionals.

15. Defendant markets its services, in part, through telemarketing such as placing text messages directly to consumers or having such text messages placed on its behalf.

## JURISDICTION AND VENUE

16. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

17. This Court has jurisdiction over Defendant because Defendant's headquarters and principal place of business are in Colorado.

18. For those reasons, and as set forth generally in this Complaint, this Court has personal jurisdiction over the parties to this action, and venue is proper pursuant to 28 U.S.C. §1391(b)(2).

## FACTUAL BACKGROUND
## DEFENDANT'S TEXT MESSAGES

19. At all times relevant to this Complaint, Hudson was the owner of a phone bearing the phone number 817-XXX-8035.

20. Hudson's phone number was placed on the national Do Not Call Registry ("DNC List") on October 17, 2009, and January 13, 2022.

21. The account for Hudson's phone is held in Hudson's personal name and not in the name of a business.

22. Hudson uses her phone primarily for personal and household purposes, including communicating with friends and family members.

23. Hudson did not inquire of Defendant's services or request Defendant's services.

24. Hudson did not provide Defendant "prior express consent" as that term is defined by 47 C.F.R. § 64.1200(f)(9) or any other form of consent to send her text messages.

25. On January 5, 2023, Hudson received a text message from Defendant, stating: "Thanks for using HomeAdvisor! Reply HELP or call 800-266-8722. Msg&data rates may apply."

26. On January 5, 2023, Hudson received a second text message from Defendant. The second text message stated: "Hello from Angi! Daymakers… is interested in your project! View details to accept their invite: http://www.smgc.co/_pruWis6a."

27. Upon clicking the link in the second text message, Hudson was directed to Defendant's website. The following language appears on the bottom of the website: "Copyright 1999-2023 HomeAdvisor, Inc." and included the names and logos of HomeAdvisor and Angi in multiple locations on the website.

28. On January 5, 2023, Hudson received a third text message from Defendant. The third text message stated, "Hello from Angi! You are now connected with a pro for your project.

4

Tap to view details: https://xy59r.app.goo.gl/nqyyukWvNLtkLZVS7."

29. Upon clicking the link in the third text message, Hudson was directed to the app store for Defendant's cell phone application. The app store shows the Angi logo for the app and identifies the name of the app as, "Angi: Hire Home Service Pros."

30. Each of the text messages from Defendant appeared as having been sent from short code 51781.

31. On information and belief, short code 51781 was a short code used by Defendant or those acting on its behalf at the time Hudson received the text messages.

32. The phone number 800-266-8722 referenced in the first text message Hudson received is a number associated with Defendant and is also a phone number Defendant has listed on its LinkedIn profile.

33. Hudson had not listed a project with Defendant and did not request to be connected with a "pro."

34. Hudson did not visit Defendant's website before receiving the text messages or click on any buttons on the website such as "view matching pros."

35. According to a 2022 Complaint filed by the FTC against Defendant (which Defendant settled for over $3 million), "HomeAdvisor represents that its leads concern people who knowingly sought its assistance in selecting a service provider, even though many of the leads HomeAdvisor sells are purchased from third parties who collect information from potential customers without first revealing their affiliation with HomeAdvisor."

36. The purpose of these text message was to solicit Hudson to purchase the services of a home service provider so that Defendant could derive a profit.

37. On information and belief, Defendant sent similar text messages to Hudson and the

5

putative class members.

38. Indeed, multiple consumers have complained about similar text messages sent by Defendant, including, but not limited to:

- "The texts and calls to my cell phone don't stop from contractors, wanting to bid on my 'solar panel project.' I have no such project and have never used or signed up for HomeAdvisor or Angie's List (they're the same company). I called their contact number (800-266-8722). They're worthless. They can't find my number in their computer, even though they text me a dozen times from short code 51781. Replying 'STOP' doesn't work. One contractor was telling me yesterday that HomeAdvisor charges him for these leads. That's not my problem. . . ."

- "Keep getting texts from HomeAdvisor wanting to give me quotes on a project. Texts from 51781."

- "Repeated texts from 51781 stating that a new pro is interested in my project. I'm in an old folks home. What project? I don't remember signing up."

39. Hudson and the putative class members did not provide Defendant "prior express written consent" as defined in 47 C.F.R. § 64.1200(f)(9) or any other form of consent to Defendant to send text messages to their phones.

40. On information and belief, Defendant knew that it was improper to send text messages to Hudson and the putative class members, yet incessantly sent them text messages.

41. The text messages Defendant placed to Hudson and the putative class members were harassing, irritating, invasive and annoying.

42. Defendant's text messages invaded Hudson's and the putative class members' right to privacy, namely the right to be left alone from unwanted telemarketing text messages.

43. Defendant's text messages caused Hudson and the putative class members to waste time and be disrupted from their daily activities, requiring them to address and/or respond to the unwanted text messages.

6

## DIRECT AND VICARIOUS LIABILITY

44. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

45. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

46. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

47. If Defendant directly sent the text messages to Hudson, Defendant is directly liable for those text messages.

48. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third parties who are unknown at this time as the links in the text messages only led back to Defendant and no other entity.

49. Alternatively, to the extent a third party sent the text messages at issue, such party or parties had actual and/or apparent authority to act on behalf of Defendant.

50. Likewise, Defendant may have also ratified a third party's violations of the TCPA by accepting leads and deriving profit from the improper text messages.

51. Defendant controlled or had the right to control the marketing activities of any potential third party. Among other things, the text messages sent to Hudson were like text messages complained of by other consumers.

52. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefiting from its agents' TCPA violations.

53. For the counts identified below, if Defendant directly sent the text messages, it is directly liable. In the alternative, to the extent any text messages were made by a third-party agent(s) acting on Defendant's behalf, Defendant can be held jointly and severally liable as Defendant is vicariously liable for those unlawful text messages.

**CLASS ALLEGATIONS**

54. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Hudson brings this Complaint as a class action on behalf of herself and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

55. Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Hudson seeks to represent the following class:

> **DNC List Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class

certification: (1) to whom Defendant (or someone acting on its behalf) sent, for solicitation purposes, two or more text messages during a 12-month period; and (2) whose number was registered on the DNC List for more than 31 days at the time the texts were sent.

The class is limited to those persons with phone numbers that were registered to an individual and not a business.

56. Hudson reserves the right to add administrative subclasses, or to amend the definition of the proposed class, during the lawsuit proceedings.

57. The members of the proposed class are so numerous that joinder of all members is impracticable. Hudson reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The names and phone numbers of the members of the proposed class are readily identifiable through records available to Defendant or those acting on its behalf.

58. Members of the proposed class have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

59. Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

   a. Whether the text messages at issue qualify as "telephone solicitations" for the purposes of 47 U.S.C. § 227(c);

   b. Whether Defendant's conduct violates 47 U.S.C. § 227(c) of the TCPA;

   c. Whether an agency relationship exists between Defendant and anyone placing such text messages on its behalf;

   d. Whether Defendant's manner and system of obtaining consumer "consent" was legally deficient;

   e. Whether Defendant implemented policies and procedures for TCPA compliance that would warrant the "good faith safe harbor" prescribed by 47 C.F.R. § 64.1200(c);

  f. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and

  g. Whether Hudson and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

60. Hudson's claims are typical of the claims of the proposed class members because her claims arise from the same conduct that gives rise to the claims of the members of the proposed class and is based on the same legal theories.

61. Hudson and her counsel will fairly and adequately protect the interests of the members of the proposed class. Hudson's interests do not conflict with the interests of the proposed class he seeks to represent. Hudson has retained lawyers who are competent and experienced in consumer litigation, the TCPA and class-actions.

62. Hudson's counsel will vigorously litigate this case as a class action, and Hudson and her counsel are aware of their responsibilities to the putative members of the class and will discharge those duties.

63. A class action is superior to all alternative methods of adjudicating this controversy, including through individual lawsuits. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible. Prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

64. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

65. Questions of law and fact, particularly the propriety of sending text messages to person on the DNC List, predominate over questions affecting only individual members.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(c) *et seq.*
### (National DNC List Violations – Individually, and on Behalf of The Putative Class)

66. Hudson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

67. The TCPA provides that is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one telephone solicitation on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

68. The penalty for each call placed in violation of the TCPA's restrictions on sending text messages to phone numbers registered on the DNC List is up to $500 per text message and up to $1,500 per text message if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

69. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting text messages to phone numbers registered on the DNC List. *See* 47 U.S.C. §§ 227(c)(5)(A).

70. By placing text messages to Hudson and the putative class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c)(1) and/or the TCPA's corresponding regulations.

71. Defendant and/or those acting on their behalf knew or should have known that Hudson's and the putative class members' phone numbers were registered on the DNC List.

72. Defendant and/or those acting on their behalf willfully violated the TCPA when send the text messages at issue to Hudson's and the putative class members' cell phones.

73. Hudson and the putative class members are entitled to damages of up to $500.00 per violation for each text message sent by Defendant and/or those acting on their behalf that the Court finds violates the TCPA and up to $1,500.00 per violation if the Court finds that Defendant or those acting on its behalf willfully violated the TCPA.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Kimberly Hudson, individually, and on behalf of all others similarly situated, requests the Court grant the following relief in her favor and against Defendant HomeAdvisor, Inc. d/b/a Angi:

A. Enter an order against Defendant, pursuant to Federal Rule of Civil Procedure 23, certifying this action as a class action and appointing Hudson as the class representative;

B. Enter an order appointing Butsch Roberts & Associates LLC as class counsel;

C. Enter judgment in favor of Hudson and the DNC List Class members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

D. Enter a judgment in favor of Hudson and the Class that enjoins Defendant from violating the TCPA's provisions and regulations;

E. Enter judgment in favor of Hudson and the Class for all applicable pre-judgment and post-judgment interest amounts;

F. Enter judgment in favor of Hudson and the Class for all costs; and,

G. Award Hudson and the Class members such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Kimberly Hudson demands a jury trial.

>BUTSCH ROBERTS & ASSOCIATES LLC
>
>*/s/ Christopher E. Roberts*
>Christopher E. Roberts
>7777 Bonhomme Avenue, Suite 1300
>Clayton, MO 63105
>Telephone: (314) 863-5700
>croberts@butschroberts.com
>
>*Attorney for Plaintiff*